ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT B. SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
gabriel.martinez2@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NORMAN MONTALVO,<br><br>Defendant. | CASE NO. CR 12-00785  CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |

The United States respectfully requests that this Court sentence defendant NORMAN MONTALVO to (1) serve seven months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $200 special assessment, and $5,250 in restitution. This sentencing recommendation is based on the government's motion for a downward departure of 40 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

/ /

**BACKGROUND**

Montalvo is charged with participating in the conspiracy in San Mateo County from June 2008 through September 2010.  Montalvo also participated in a second conspiracy in San Francisco County from March 2009 through April 2010.  Presentence Report (PSR) ¶ 14.

Montalvo has been involved in the real estate business since approximately 1989, initially working with his uncle at Montalvo Realty.  After making a presentation on short sales to a firm co-owned by Mohammed Rezaian, he was hired to work as a broker for Rezaian's firm.  Subsequently, Montalvo, Rezaian and one other partner formed a new company, KOR, Inc., to purchase properties at foreclosure auctions and resell them.  PSR ¶ 15.

At one of his first foreclosure auctions in San Francisco, Montalvo observed Giraudo negotiate a payoff agreement.  This was not a surprise to him.  Montalvo was already aware that "this type of activity occurred at auction sales," and that "this type of activity was illegal."  PSR ¶ 16.

For a time, neither Rezaian nor Montalvo engaged in bid rigging.  However, Montalvo recalls that while he was bidding on a property at the San Mateo auction, Giraudo approached either Rezaian or his other partner advising that KOR "would not be able to buy the property "unless they agreed to pay Giraudo between $5,000 and $10,000 to stop bidding."  His investor agreed to the payoff and purchased the property.  PSR ¶ 16.

As the partners became more deeply embroiled in bid rigging, Montalvo and Rezaian split roles; Montalvo qualified and bid and Rezaian was involved in payoff negotiations.  When an agreement was reached, Rezaian signaled Montalvo to stop bidding or the other bidders stopped bidding and one of them purchased the property.  However, sometimes their roles were reversed.  For example, on a property located at 717 South Idaho in San Mateo, Montalvo entered into an agreement with Dan Rosenbledt to stop bidding for $2,500.  Montalvo signaled to Rezaian to stop bidding, and Rosenbledt bought the property.  At a later date, Rosenbledt gave Montalvo an envelope containing $2,500 in cash, which he gave to Rezaian.  PSR ¶ 17.

Montalvo also invested his own money in bid-rigged properties.  For example, he invested in 1021 Rhode Island Street in San Francisco with Giraudo, Grinsell, Rezaian and two

1  others.  A $10,000 payoff was recorded in Montalvo's records as a payment toward evacuation
2  of tenants.  Montalvo was aware that participating in agreements to pay other bidders to refrain
3  from or to stop bidding was illegal from the very first time he attended the trustee sales.  PSR ¶
4  18.

5         On November 1, 2012, Norman Montalvo was charged by information with two counts
6  of bid rigging and two counts of conspiracy to commit mail fraud.  Dkt. 1.  On January 23, 2013,
7  Montalvo pleaded guilty and began cooperating with the government's investigation.  Dkt. 10.
8  On October 11, 2017, by stipulation, Montalvo withdrew from his original plea agreement and
9  entered a new plea agreement to bid-rigging charges only.  Dkt. 48.

10         Montalvo's plea agreement reflects his participation in rigging bids for 18 properties in
11  San Francisco and San Mateo counties, and a volume of commerce of $4,303,507.00.  PSR ¶ 18.

12  <center>**ARGUMENT**</center>

13  **A.**     **Sentencing Guidelines Calculations**

14         **1.**     **Criminal History**

15         In Paragraph 12 of the plea agreement, the parties agree that Montalvo's Criminal History
16  Category is determined by the Court.  Dkt. 48.  The Presentence Report (PSR) calculates
17  Montalvo's Criminal History Category as I, based on minimal criminal history.  PSR ¶¶36-41.

18         **2.**     **Offense Level**

19         The PSR calculates the total offense level as 13, consistent with the plea agreement.  PSR
20  ¶ 35.  This calculation includes a one-level increase to the base offense level of 12 for conduct
21  involving the submission of non-competitive bids, a two-level increase for a volume of
22  commerce exceeding $1 million, and a downward reduction of two levels for acceptance of
23  responsibility.  PSR ¶¶ 26-35.  U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1),
24  2R1.1(b)(2)(A), and 3E1.1(a) (U.S. Sentencing Comm'n 2016).

25         Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category
26  of I results in a sentence ranging from twelve to eighteen months of imprisonment.

27  / /
28  / /

### 3.  Fine and Restitution

The PSR calculates a fine range of $43,035 to $215,175, consistent with the plea agreement.  PSR ¶ 76; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000).  In the plea agreement, the government agreed to recommend a fine between $4,000 and $40,000.  Dkt. 48.  The government recommends a $4,000 fine in conjunction with its custodial recommendation.  This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement.

The government recommends restitution in the amount of $5,250, consistent with the plea agreement.  Dkt. 48.

### B.  Basis for Downward Departure for Substantial Assistance

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance to the investigation.  The government recommends a 40 percent reduction from the low end of the Guidelines range of 12 months, resulting in a sentence of 7 months.

The timing, significance, nature and extent of Montalvo's cooperation warrant a 40 percent reduction.  Montalvo entered his plea agreement pre-indictment on February 20, 2013, and immediately began cooperating in the investigation.  His plea may have influenced the decisions of defendants who pleaded after him to also plead guilty and accept responsibility.  In particular, the government believes that his plea was a significant contributing factor in co-conspirator Mohammed Rezaian's subsequent decision to plead guilty

Additionally, Montalvo provided two candid interviews with the FBI in which he produced and explained his notes regarding certain bid-rigging agreements.  During his interview, Montalvo provided corroborating information regarding the operation of the conspiracy, the conduct of other conspirators, and various bid-rigging agreements.  Montalvo also made himself readily available to the prosecution team in the event he would be needed for further information or potential testimony.

/ /

1    For these reasons, a 40 percent downward departure for substantial assistance to the

2 investigation and prosecution of these cases is appropriate.

3 **C.    Sentencing Recommendation**

4    The government's recommendation of seven months is reasonable and not greater than

5 necessary in light of the factors articulated in 18 U.S.C. § 3553.  The government believes the

6 Court's sentence must reflect the seriousness of the offense, promote respect for the law, and

7 afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

8    Given the magnitude of the financial harm caused by Montalvo's conduct, the

9 government's recommendation, which includes a custodial term, is appropriate and consistent

10 with the commentary in the applicable Guidelines.  The commentary makes clear that "prison

11 terms for [Antitrust] offenders should be . . . common" and "alternatives such as community

12 confinement [should] not be used to avoid imprisonment of antitrust offenders."  U.S.S.G.

13 §2R1.1, cmt. n. 5 & Background.  A fine alone would not serve as an adequate deterrent in the

14 absence of a custodial term.  The foreclosure auctions were vulnerable to bid rigging, especially

15 in the aftermath of the foreclosure crisis, when the auctions were flooded with investment

16 opportunities.  Montalvo did not originate the conspiracy, but he joined in willingly and was

17 involved in rigging 18 properties.  PSR ¶ 18.

18    The government's recommended sentence also adequately considers the history and

19 characteristics of defendant, including his early decision to accept responsibility, his willingness

20 to pay restitution and cooperate in the investigation, and his minimal criminal history.

21 / /

22 / /

23 / /

24 / /

25 / /

26 / /

27 / /

28 / /

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 40 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Norman Montalvo to (1) serve seven months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $4,000, a $200 special assessment, and $5,250 in restitution.


Dated:  April 19, 2018                      Respectfully submitted,


                                            /s/ GABRIEL MARTINEZ
                                            United States Department of Justice
                                            Antitrust Division